**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RNS SERVICING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| PAMELA GRECO, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff RNS Servicing, LLC ("RNS"), through its attorneys, states the following as its Complaint against defendant Pamela Greco ("Greco"):

### The Parties

1.      Plaintiff RNS is a limited liability company organized under the laws of the State of Illinois. RNS's principal place of business is in Skokie, Illinois.  RNS has two members who are citizens and residents of the State of Illinois.

2.      Defendant Greco is a citizen and resident of the State of Florida.

### Jurisdiction and Venue

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois.

## COUNT I

## BREACH OF CONTRACT – PROMISSORY NOTE DATED OCTOBER 30, 2006

5.      RNS realleges and incorporates by reference the allegations contained in paragraphs 1 through 4 as if fully set forth herein.

6.      On or before October 30, 2006, IFC Credit Corporation ("IFC") and Greco entered into an agreement whereby IFC agreed to sell and Greco agreed to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment leases with third persons to which IFC would otherwise be entitled to receive in connection with those specified equipment leases ("Greco Residual Interests Agreement No. 2").

7.      At or before the time of entering into Greco Residual Interests Agreement No. 2 Greco was made aware that the equipment lease residual interests were subordinate to the rights of one or more lenders and that in the event of any default by any equipment lessee the leased equipment could be repossessed and sold in order to satisfy the balance which IFC owned to any such lender or lenders who had an interest in the equipment leases.

8.      On or about October 30, 2006, IFC and Greco entered into and executed certain agreements which memorialized Greco Residual Interests Agreement No. 2. These memorials included the following:

a.      Residual Interest Sales Agreement dated October 30, 2006;

b.      Residual Interest Sales Supplement Agreement ("Supplement") No. 01 dated October 30, 2006;

c.      Bill of Sale dated October 30, 2006;

d.      Chattel Mortgage Security Agreement dated October 30, 2006; and

e.      Promissory Note dated October 30, 2006 which was executed by Greco as "Maker" (hereinafter referred to as "Greco Promissory Note No. 1").

See Group Exhibit A appended hereto and made a part hereof as if set forth herein which includes true and correct copies of the aforesaid documents which comprise Greco Residual Interests Agreement No. 2.

9.      According to the terms of the Greco Residual Interests Agreement No. 2, IFC retained a collateral interest in certain equipment lease residuals to secure payment of Greco Promissory Note No. 1.

10.      In consideration for entering into Greco Residual Interests Agreement No. 2, Greco was to receive residual interest payments based on the performance of the certain equipment leases.

11.      Greco directly received and/or had credited to the balance due and owing on Greco Promissory Note No. 1 residual interest payments received by IFC based on the performance of the certain equipment leases.

12.      By its terms, Greco Promissory Note No. 1 matured on August 25, 2013.

13.      Greco failed to make all payments due on Greco Promissory Note No. 1.

14.      The terms of Greco Promissory Note No. 1 provided that "The holder hereof shall be required to look first to the collateral for the payment of this Note." Group Exh. A-5.

15.      IFC has looked to the collateral which secured Greco Promissory Note No. l but is unable to reduce any such collateral to liquid funds to pay down or pay off Greco Promissory Note No. 1. However, even if IFC could reduce the collateral which secured Greco Promissory Note No. 1 into liquid assets, such assets could not be used to pay down or pay off Greco Promissory Note No. 1 since one or more of IFC's lenders has a first-in-time first-in-right priority interest in any and all residuals derived from that same collateral.

3

16.     On or about July 30, 2014, RNS entered into that certain Asset Purchase and Transition Services Agreement with David Leibowitz as Chapter 7 trustee of the Estate of IFC Credit Corporation for the purchase of, among other things, the debtor's right, title and interest in the Greco Promissory Note No. 1 ("Asset Purchase Agreement"). On or about August 7, 2014, the United States Bankruptcy Court for the Northern District of Illinois entered an order authorizing and approving the transaction contemplated in the Asset Purchase Agreement. RNS, therefore, holds all right, title and interest in the Greco Promissory Note No. 1 and has standing to pursue this action.

17.     RNS has made demand on Greco for payment of all sums due and owing it on Greco Promissory Note No. 1.

18.     There remains due and owing by one or both Defendants to RNS on Greco Promissory Note No. 1 the sum of $96,719.74.

WHEREFORE, RNS prays that judgment be entered against Greco on Count I of this Complaint in the amount of $96,719.74, together with costs, interest and expenses and such other relief as the Court deems just and proper.

## COUNT II

## BREACH OF CONTRACT – PROMISSORY NOTE DATED SEPTEMBER 28, 2007

1-4.     RNS realleges and incorporates by reference Paragraphs 1 through 4 as if fully set forth herein.

5.     On or before September 28, 2007, IFC Credit Corporation ("IFC") and Greco entered into an agreement whereby IFC agreed to sell and Greco agreed to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment

leases with third persons to which IFC would otherwise be entitled to receive in connection with those specified equipment leases ("Greco Residual Interests Agreement No. 4").

6.      At or before the time of entering into Greco Residual Interests Agreement No. 4 Greco was made aware that the equipment lease residual interests were subordinate to the rights of one or more lenders and that in the event of any default by any equipment lessee the leased equipment could be repossessed and sold in order to satisfy the balance which IFC owned to any such lender or lenders who had an interest in the equipment leases.

7.      On or about September 28, 2007, IFC and Greco entered into and executed certain agreements which memorialized Greco Residual Interests Agreement No. 4. These memorials included the following:

a.      Residual Interest Sales Agreement dated September 26, 2007;

b.      Residual Interest Sales Supplement Agreement ("Supplement") No. 01 dated September 28, 2007;

c.      Bill of Sale dated September 28, 2007;

d.      Chattel Mortgage Security Agreement dated September 28, 2007; and

e.      Promissory Note dated September 28, 2007which was executed by Greco as "Maker" (hereinafter referred to as "Greco Promissory Note No. 2").

See Group Exhibit B appended hereto and made a part hereof as if set forth herein which includes true and correct copies of the aforesaid documents which comprise Greco Residual Interests Agreement No. 4.

8.      According to the terms of the Greco Residual Interests Agreement No. 4, IFC retained a collateral interest in certain equipment lease residuals to secure payment of Greco Promissory Note No. 2.

9.     In consideration for entering into Greco Residual Interests Agreement No. 4, Greco was to receive residual interest payments based on the performance of the certain equipment leases.

10.     Greco directly received and/or had credited to the balance due and owing on Greco Promissory Note No. 2 residual interest payments received by IFC based on the performance of the certain equipment leases.

11.     By its terms, Greco Promissory Note No. 2 matured on November 25, 2013.

12.     Greco failed to make all payments due on Greco Promissory Note No. 2.

14.     The terms of Greco Promissory Note No. 2 provided that "The holder hereof shall be required to look first to the collateral for the payment of this Note." Group Exh. B-5.

15.     IFC and its successor has looked to the collateral which secured Greco Promissory Note No. 2 but is unable to reduce any such collateral to liquid funds to pay down or pay off Greco Promissory Note No. 2. However, even if IFC could reduce the collateral which secured Greco Promissory Note No. 2 into liquid assets, such assets could not be used to pay down or pay off Greco Promissory Note No. 2 since one or more of IFC's lenders has a first-in-time first-in-right priority interest in any and all residuals derived from that same collateral.

16.     On or about July 30, 2014, RNS entered into that certain Asset Purchase and Transition Services Agreement with David Leibowitz as Chapter 7 trustee of the Estate of IFC Credit Corporation for the purchase of, among other things, the debtor's right, title and interest in the Greco Promissory Note No. 2 ("Asset Purchase Agreement"). On or about August 7, 2014, the United States Bankruptcy Court for the Northern District of Illinois entered an order authorizing and approving the transaction contemplated in the Asset Purchase Agreement. RNS,

therefore, holds all right, title and interest in the Greco Promissory Note No. 2 and has standing to pursue this action.

17.     RNS has made demand on Greco for payment of all sums due and owing it on Greco Promissory Note No. 2.

18.     There remains due and owing by Greco to RNS on Greco Promissory Note No. 2 the sum of $416,880.97.

WHEREFORE, RNS prays that judgment be entered against Greco on Count II of this Complaint in the amount of $416,880.97, together with costs, interest and expenses and such other relief as the Court deems just and proper.


## COUNT III

## BREACH OF CONTRACT – PROMISSORY NOTE DATED MARCH 30, 2008

1-4.     RNS realleges and incorporates by reference Paragraphs 1 through 4 as if fully set forth herein.

5.     On or before March 30, 2008, IFC Credit Corporation ("IFC") and Greco entered into an agreement whereby IFC agreed to sell and Greco agreed to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment leases with third persons to which IFC would otherwise be entitled to receive in connection with those specified equipment leases ("Greco Residual Interests Agreement No. 5").

6.     At or before the time of entering into Greco Residual Interests Agreement No. 5 Greco was made aware that the equipment lease residual interests were subordinate to the rights of one or more lenders and that in the event of any default by any equipment lessee the leased

equipment could be repossessed and sold in order to satisfy the balance which IFC owned to any such lender or lenders who had an interest in the equipment leases.

7.      On or about March 30, 2008, IFC and Greco entered into and executed certain agreements which memorialized Greco Residual Interests Agreement No. 5. These memorials included the following:

      a.      Residual Interest Sales Agreement dated March 30, 2008;

      b.      Residual Interest Sales Supplement Agreement ("Supplement") No. 01 dated March 30, 2008;

      c.      Bill of Sale dated March 30, 2008;

      d.      Chattel Mortgage Security Agreement dated March 30, 2008; and

      e.      Promissory Note dated March 30, 2008 which was executed by Greco as "Maker" (hereinafter referred to as "Greco Promissory Note No. 3").

See Group Exhibit C appended hereto and made a part hereof as if set forth herein which includes true and correct copies of the aforesaid documents which comprise Greco Residual Interests Agreement No. 5.

8.      According to the terms of the Greco Residual Interests Agreement No. 5, IFC retained a collateral interest in certain equipment lease residuals to secure payment of Greco Promissory Note No. 3.

9.      In consideration for entering into Greco Residual Interests Agreement No. 5, Greco was to receive residual interest payments based on the performance of the certain equipment leases.

10.      Greco directly received and/or had credited to the balance due and owing on Greco Promissory Note No. 3 residual interest payments received by IFC based on the performance of the certain equipment leases.

11.     By its terms, Greco Promissory Note No. 3 matured on May 25, 2013.

12.     Greco failed to make all payments due on Greco Promissory Note No. 3.

14.     The terms of Greco Promissory Note No. 3 provided that "The holder hereof shall be required to look first to the collateral for the payment of this Note." Group Exh. C-5.

15.     IFC and its successor has looked to the collateral which secured Greco Promissory Note No. 3 but is unable to reduce any such collateral to liquid funds to pay down or pay off Greco Promissory Note No. 3. However, even if IFC could reduce the collateral which secured Greco Promissory Note No. 3 into liquid assets, such assets could not be used to pay down or pay off Greco Promissory Note No. 3 since one or more of IFC's lenders has a first-in-time first-in-right priority interest in any and all residuals derived from that same collateral.

16.     On or about July 30, 2014, RNS entered into that certain Asset Purchase and Transition Services Agreement with David Leibowitz as Chapter 7 trustee of the Estate of IFC Credit Corporation for the purchase of, among other things, the debtor's right, title and interest in the Greco Promissory Note No. 3 ("Asset Purchase Agreement"). On or about August 7, 2014, the United States Bankruptcy Court for the Northern District of Illinois entered an order authorizing and approving the transaction contemplated in the Asset Purchase Agreement. RNS, therefore, holds all right, title and interest in the Greco Promissory Note No. 3 and has standing to pursue this action.

17.     RNS has made demand on Greco for payment of all sums due and owing it on Greco Promissory Note No. 3.

18.     There remains due and owing by Greco to RNS on Greco Promissory Note No. 3 the sum of $753,991.

WHEREFORE, RNS prays that judgment be entered against Greco on Count II of this Complaint in the amount of $753,991, together with costs, interest and expenses and such other relief as the Court deems just and proper.

**RNS SERVICING, LLC**


By:    /s/ Howard L. Teplinsky
                One of Its Attorneys


Howard L. Teplinsky – 6197501
Beermann Pritikin Mirabelli Swerdlove, LLC
161 N. Clark Street, Suite 2600
Chicago, IL 60601
(312) 621-9700
hteplinsky@beermannlaw.com